## Ihmsen *versus* Lathrop.

1. The fact that a clerk, salesman or agent of a partnership uses the firm name in transacting its business, without disclosing that he is not a member thereof, will not make him liable as a partner to those with whom he has thus dealt, unless there is other affirmative evidence that he held himself out as such.

2. A. was constituted the general manager and superintendent of the business of a firm, with sole power to make all contracts and sign all commercial paper. He was not a member of the firm, but his name, with the exception of a middle initial, was identical with that of one of the partners, who was his son. A. wrote and signed the firm name to a letter to B., inviting proposals for a contract. He personally concluded with B. the said contract, to which, when reduced to writing, he signed the firm name, and as the consideration therefor, he wrote and, in pur-' suance of his general authority as manager, signed the firm name to a promissory note, on which suit was brought against him and the members of the firm. The court below instructed the jury that "if there was nothing in A.'s words and acts, or otherwise, to indicate to B." that A. was not a member of the firm, they should find a verdict for the plaintiff." *Held:* To be error.

October 23rd 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN and CLARK, JJ., absent.

ERROR to the Court of Common Pleas No. 2 of *Allegheny county:* Of October and November Term 1883, No. 36.

Assumpsit, by Alonzo W. Lathrop against C. T. Ihmsen and Domenec Ihmsen on a promissory note for $264.72 signed "Ihmsen & Co." The suit was originally tried before an alderman, who entered judgment for the plaintiff against C. T. Ihmsen but in favor of Domenec Ihmsen. On appeal by Lathrop, the cause was removed into the Common Pleas.

On the trial, before KIRKPATRICK, J., the following facts appeared: The firm of Ihmsen & Co. was organized in Pittsburgh January 1st 1881 for the purpose of manufacturing glass. It consisted of Christian T. Ihmsen and Domenec O. Ihmsen. and succeeded a firm consisting of the said Christian T. Ihmsen Domenec O. Ihmsen, J. W. Lake, and C. Ihmsen, Jr. Due

[Ihmsen *v.* Lathrop.]

notice of the formation of the new firm and the names of its members was given to the public by the usual advertisement in two newspapers of the city of Pittsburgh and by circulars addressed to the customers of the firm which it succeeded. In the articles of copartnership, Domenec Ihmsen, the father of Domenec O. Ihmsen, was duly constituted the general manager and superintendent of the firm's business, with sole power and authority to make all contracts and sign the firm name to all commercial paper. In February 1881, the said Domenec Ihmsen wrote and signed the firm name to a letter to J. S. Reed & Co., inviting proposals for furnishing boxes, in which to pack glass. Upon the receipt of this letter, W. W. Reed, representing the latter firm, went over to see Domenec Ihmsen, who was not in ; he saw Domenec O. Ihmsen, however, who told him that he (Domenec O. Ihmsen) " could do nothing ;" but that Reed " would have to see his father," the defendant. Reed further testified : " The next day I went over and saw Mr. Domenec Ihmsen, and he told me that he wanted to make a contract for these boxes with us, and he gave me a price list that he had in a pass-book, and he told me if we made boxes after that description and took ninety days' paper for them we could make them ; I told Mr. D. Ihmsen I would consult my father ; I did so, and then I asked Mr. Lathrop if he would take the paper, and Mr. Lathrop went over to see if they wouldn't give sixty days' paper ; Mr. Lathrop and I went over, and we made this contract."

Upon the conclusion of the contract, it was reduced to writing and Domenec Ihmsen signed the firm name thereto ; as a consideration therefor, he further wrote and signed the firm name to a promissory note, upon which this suit was brought by Alonzo W. Lathrop, who had discounted it.

Evidence was admitted on behalf of the plaintiff that Domenec Ihmsen had admitted on the trial before the alderman that he had seen a copy of the Pittsburgh Directory for 1880–1 in which he was named as " of Ihmsen & Co." and had made no effort to correct the error, if any. The plaintiff further offered in evidence the directory in question and also that for 1881–2 for the purpose of showing that the defendant permitted and continued to permit his name to be held out to the world as a member of said firm of Ihmsen & Co. ; objected to, as it had not been shown that the entries were made with the consent or by the authority of Domenec Ihmsen. Objection overruled and evidence admitted. Exceptions. (Second and third assignments of error.) The plaintiff contended that under these facts Domenec Ihmsen was either a member of the firm of Ihmsen & Co., or if not a member, had so held himself out to the world as such, as to estop him from denying his liability on said note.

[Ihmsen *v.* Lathrop.]

Domenec Ihmsen testified that he was not a member of said firm, in which he was corroborated by other witnesses; that he had given the fullest information to all who inquired as to his relations therewith; that his first knowledge of the entry in the directory for 1880–81 was after its publication; that when the agent came to collect the money for the directory, the witness refused to pay for it, unless the entry was corrected; that the agent said it was too late to be changed then; but that it would be altered in the issue for the next year; that he saw the directory for 1881–2, and although some alteration had been made, it was still incorrect.

The plaintiff submitted the following point:

1. That if it be found from the evidence that the defendant, Domenec Ihmsen, by the name "Ihmsen & Co.," signed letters to J. S. Reed & Son, which was sent to and received by them, that by the same name he signed a contract negotiated by himself with said Reed & Son for boxes, that for the price of boxes delivered under such contract, he afterwards, by the same name, signed the note in suit and caused it to be delivered to the said Reed & Son, and there was nothing in his words or acts, or otherwise, to indicate to said Reed & Son that the name "Ihmsen & Co." did not embrace him, and that consequently, the said Reed & Son believed him to be a member of "Ihmsen & Co.," and on such belief gave credit to him as such, for the debt sued for, the verdict should be for the plaintiff. Affirmed. (First assignment of error.)

The court instructed the jury that if they found that Domenec Ihmsen was a member of the firm of Ihmsen & Co., or had so acted as to induce such a belief in Reed & Son, and if they found that Reed & Son were men of ordinary care and prudence, then they should find a verdict for the plaintiff; aliter, for the defendant.

Verdict for plaintiff for $268.27, and judgment thereon. The defendant took this writ of error, assigning as error, the admission of the directories in evidence, and the affirmation of plaintiff's first point.

*Barton & Son,* for the plaintiff in error.

*John G. Bryant,* for the defendant in error, cited Burgan *v.* Cahoon, 1 Penny. 330.

Mr. Justice TRUNKEY delivered the opinion of the court, January 7th 1884.

Unless all the witnesses who had knowledge of the persons who were members of the firm of Ihmsen & Co. falsified, Dom-

[Ihmsen *v.* Lathrop.]

enec Ihmsen was not a partner, but was the duly authorized agent to transact the business of that firm. It was within the line of his employment to manage the business, make contracts for materials and labor, and for sale of products, and to sign the firm name to checks, notes, drafts or other commercial paper. The learned judge of the Common Pleas instructed the jury that if he performed the duties of his employment, he was liable upon the contract of his principal as if a partner, for this is the meaning of the plaintiff's first point, which was affirmed. There was no denial of the facts upon which that point was based. Domenec Ihmsen, in accord with his authority, signed the name of Ihmsen & Co. to the letters, and to the contract, and to the note in suit, and delivered the same to Reed & Son, and he negotiated the contract; upon these facts the court ruled that the verdict should be for the plaintiff. He does not claim that there was anything in his words or acts, or otherwise, to indicate to Reed & Son that he was not a member of the firm. Upon the simple fact that he transacted the business for and in the name of the firm, the court decided that Reed & Son had the right to believe he was a partner, and to credit him as such. Had he done the business in his own name, he would have been liable as well as his principals. No authority has deen cited nor reason given for holding that a clerk, salesman or agent of a partnership who uses the firm name in transacting its business, should be liable as a partner, without other affirmative evidence that he held himself out as a partner. It is unusual for an agent or salesman in doing the business of his employers, to give notice that he is only a servant to the person with whom he is dealing. This case differs from Burgan *v.* Cahoon, 1 Pennypacker 320, for there, evidence was adduced of Burgan's acts and declarations in connection with the making of the contract, and the whole submitted to the jury with instructions that his acts must have been such as to justify a reasonable belief that he was a partner. Here, the court charged that if Domenec Ihmsen did certain things named in the point, he was a partner; and the first assignment of error is sustained.

Proof having been made that Domenec Ihmsen admitted that he had seen the city directory of 1880, and also the one of 1881, and made no effort to have his name changed in the latter, although he knew he was held out as a partner in the firm of Ihmsen & Co. in the former, both were received as evidence tending to show that he had suffered his name to be published as a partner. The court acted upon the testimony showing the admission. If the jury believed the testimony of Domenec Ihmsen, that he did object to the manner in which his name was published, and refused to pay for the directory until cor-

[Patterson's Appeal.]

rection, then they could have given no weight to the publication. The publication of the directory of 1880 was without his knowledge, and, but for the alleged admission, could not have been received in evidence against him. Whether he had allowed his name, without objection, to be published as a partner, was a question for the jury.

Judgment reversed, and venire facias de novo awarded.